IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| COMMERCE AND INDUSTRY INSURANCE COMPANY : : : Plaintiff, : : v. : : CENTURY SURETY COMPANY, : : Defendant. : | Case No. 2:16-CV-00320 JUDGE ALGENON L. MARBLEY Magistrate Judge Kimberly Jolson |

## **OPINION AND ORDER**

This matter is before the Court on the Cross-Motions for Summary Judgment of Plaintiff Commerce and Industry Insurance Company (C&I) and Defendant Century Surety Company (Century). (ECF No. 36, 37). For the reasons set forth below, the Court **DENIES** C&I's Motion for Summary Judgment and **GRANTS** Century's Motion for Summary Judgment.

### I. BACKGROUND

This is a case about the obligations of two insurance companies—Commerce and Industry Insurance Company (C&I) and Century Surety Company—to each other. The underlying event giving rise to this litigation was an ATV accident in Alaska. The accident victim filed a personal injury lawsuit against various insured parties. Based on the allegations in the underlying complaint, both insurance companies became involved in defending those insured parties. All of the underlying personal injury claims have been resolved. C&I and Century now dispute which insurer should bear which defense costs.

#### A. Factual Background

#### 1. Kathryn Daniel's Negligence Case

Kathryn Daniel was an engineer who worked in Port Heiden, Alaska, the site of an environmental remediation project. (ECF No. 1 at 2). The general contractor on the project was Weston Solutions, Inc.; Aniakchak Contractors, Inc., was a subcontractor that provided local transportation. (*Id.*). On September 14, 2009, Ms. Daniel was riding home from a work-related barbeque on the back of an ATV driven by Konan Lind, an employee of Aniakchak. (*Id.*).

The ATV crashed, and Ms. Daniel was injured. (*Id.*). She asserted claims against Mr. Lind as well as against Weston and Aniakchak. (*Id.* at 3). She later settled her claims against Mr. Lind and Aniakchak, leaving Weston as the sole Defendant. (*Id.* at 4).

Ms. Daniel's case against Weston went to trial in the Superior Court of the State of Alaska. (*Id.*). The jury returned a verdict for Weston, allocating one hundred percent of the fault for the accident to Ms. Daniel and Mr. Lind. (*Id.*). Ms. Daniel's claims were thus fully resolved.

## 2. The Insured Parties

Weston was insured by C&I, and Aniakchak was insured by Century. (ECF No. 36, Exh. 1). Both policies contain identical language governing the extent to which acts of employees are covered: employees are insured "for acts within the scope of their employment . . . or while performing duties related to the conduct of [the] business." (ECF. No. 37-6 at 9, ECF No. 37-13 at 8). The complaint alleged that Mr. Lind's work was directed and controlled by both companies. (ECF No. 37-4 at 18).

During the litigation surrounding Ms. Daniel's claims, Century—as the insurer of Aniakchak—also agreed to defend Mr. Lind. (ECF No. 36 at 4-5). Mr. Lind's defense counsel tendered defense to C&I as well, but C&I refused to participate in Mr. Lind's defense. (*Id.* at 5).

C&I *did* agree to defend the allegations against Weston. (ECF No. 37 at 7). Weston's defense counsel also tendered defense to Century, on the basis that the Century Policy included

2

additional coverage for Weston. (ECF No. 36 at 5). Century agreed that it might be responsible for some of Weston's coverage, but because C&I and Century could not agree as to the extent to which the policies interacted, C&I defended Weston alone. (ECF No. 37 at 7).

It is against this backdrop that the current litigation arose. The sole question at issue is: as between Century and C&I, who is obligated to pay for Weston's and Mr. Lind's defenses?

C&I now argues it had no responsibility whatsoever to defend Weston, so it sued Century, seeking reimbursement for 100% of the defense costs incurred in defending Weston—costs to the tune of $1.2 million. (ECF No. 37 at 8). Century argues that, at best for C&I, both companies were jointly responsible for Weston's defense, and that the costs should be allocated on a pro-rated basis. (ECF No. 36 at 2).

Century also counterclaimed, arguing that because the Century Policy only provided coverage in excess of C&I's coverage, C&I was 100% responsible for Mr. Lind's defense. (ECF No. 36 at 8).

### B. Procedural Background

C&I filed the instant litigation against Century seeking reimbursement for 100% of defense costs C&I incurred in defending Weston. Century counterclaimed for 100% of the defense costs Century incurred in defending Mr. Lind. The parties filed cross Motions for Summary Judgment, upon which the Court now opines. (ECF No. 36, 37).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence

must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### III. ANALYSIS

#### A. Applicable Law

In a diversity case, this Court "appl[ies] the choice of law principles of the forum State, here Ohio." *Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 185 (6th Cir. 2017), reh'g denied (Nov. 30, 2017) (citing *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir 2017)). Under Ohio law, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties." *Sekeres v. Arbaugh*, 31 Ohio St. 3d 24, 25, 508 N.E.2d 941, 942 (1987).

4

Here, the Century Policy was issued to an Alaskan insured—Aniakchak—and governs risks located entirely within Alaska. It is therefore governed by Alaska law. The C&I Policy was issued to a Pennsylvanian insured—Weston—and covers Weston's risks nationwide. It is therefore governed by Pennsylvania law. The parties do not dispute these conclusions. (ECF No. 36 at 7; ECF No. 37 at 8).

Under Alaska law, the duty to defend arises "if the complaint *on its face* alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy or, if the complaint does not contain such allegations, where 'the true facts are within, or potentially within, the policy coverage and are known or reasonably ascertainable to the insurer.'" *Attorneys Liab. Prot. Soc'y, Inc., v. Ingaldson Fitzgerald, P.C.*, 370 P.3d 1101, 1111–12 (Alaska 2016) (quoting *CHI of Alaska, Inc. v. Emp'rs Reinsurance Corp.*, 844 P.2d 1113, 1115 n. 5 (Alaska 1993) (emphasis in original) (citation omitted)).

The duty to defend arises under Pennsylvania law in virtually identical circumstances: "'An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy' . . . This broad duty to defend is mutually beneficial as it protects the insured 'from the cost of defense' while allowing the insurer 'to control the defense to protect itself against potential indemnity exposure.'" *Babcock & Wilcox Co. v. Am. Nuclear Ins.*, 635 Pa. 1, 20, 131 A.3d 445, 456 (2015) (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 607-16, 2 A.3d 526, 540-45 (2010)).

### B. Who must bear the costs of Weston's defense?

C&I, as the primary insurer of Weston, paid all of Weston's defense costs during the underlying litigation, incurring approximately $1.2 million in costs. (ECF No. 37-7). It now

5

argues that Century must reimburse C&I for the full amount of Weston's defense costs incurred after the date of tender. (ECF No. 37 at 8).

Specifically, C&I maintains that the Century Policy provides primary coverage to Weston with no right of contribution against Weston's own insurers. In support of this contention, C&I points to a clause of the Century Policy it refers to as the Primary Additional Insured (AI) Endorsement.[1] That clause appears to incorporate by reference any Additional Insured "as required by written contract." Weston's subcontract required Aniakchak to carry insurance covering Weston as an additional insured.[2] And the subcontract specifically noted that

---

[1] This portion of the Century Policy reads, in relevant part:

    A.    Section II – Who Is an Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

        1.    Your acts or omissions; or

        2.    The acts or omissions of those acting on your behalf;

    in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(ECF No. 37-6). The schedule to this endorsement identifies the "name of additional insured person(s) or organization(s)" as "blanket as required by written contract. (*Id.*).

[2] Aniakchak's subcontract with Weston shows that Aniakchak agreed to defend and indemnify Weston:

    To the fullest extent permitted by law, Subcontractor [Aniakchak] shall indemnify, defend and hold harmless Weston and Weston's . . . employees . . . from and against all claims, damages, losses, costs and expenses, including but not limited to attorneys' fees arising out of or resulting from the performance of Subcontractor's Work, provided that any such claim . . . : (1) is attributable to bodily injury . . . and is caused or alleged to be caused in whole or in any part by any act or omission of a Subcontractor . . . regardless of whether it is also caused in party by a party indemnified hereunder, or (2) arises out of or relates to Subcontractor's performance under this Agreement, or results from any claimed failure of Subcontractor to properly fulfill its obligations under this Agreement.

The subcontract also contains a provision governing liability insurance to cover these indemnification obligations:

"[p]olicies required to be maintained by [Aniakchak] shall be considered as primary insurance and any similar policy maintained by Weston shall be considered excess and non-contributing." (ECF No 1-4). Therefore, in C&I's view, the Century Policy was the primary insurance for Weston and C&I holds an excess and non-contributing policy.[3]

Century argues that C&I is responsible for Weston's defense. To begin with the obvious, Weston is the named insured under the C&I Policy. Meanwhile, the "excess insurance" clause in the Century Policy provides that the Century Policy is excess "over any other insurance. . . . unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part" and that when the insurance is excess, Century has no duty to defend.[4] The C&I

---

> Subcontractor shall maintain at its own expense . . . Commercial General Liability . . . insurance for the duration of time Weston is required to maintain insurance by Weston's Client, or for three (3) years following final payment under this Agreement, whichever period is longer, as follows:
>
> . . . Commercial General Liability . . . $1,000,000 per occurrence . . .

[3] C&I also argues that "[t]he clearest evidence of Century's defense obligation is that Century itself *agreed to participate in Weston's defense.*" (ECF No. 37 at 11). This argument is unavailing. Century's belief at the time the defense was tendered has nothing to do with the objective inquiry whether Century owed a duty to defend. But even if it did, the letter is not compelling evidence as it only indicates that Century was "amenable to *some* form of allocation of defense costs." (ECF No. 37-10 (emphasis added)).

[4] This portion of the Century Policy reads, in relevant part:

> **Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover . . . our obligations are limited as follows:
>
> a. This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess contingent, umbrella, or on any other basis; unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part.
>
> b. When this insurance is in excess, we will have no duty . . . to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".

(ECF No. 37-6).

7

Policy, by contrast, does not contain an "excess insurance" clause but instead states that it is primary except for in certain conditions not applicable here.[5] (ECF No. 36 at 8-9).

Century further argues that Weston does not qualify as an "additional insured" under the Century Policy. This is so because the AI Endorsement, by its own terms, names Century a primary insurer only with respect to liability caused by Aniakchak's acts or omissions or the acts or omissions of those acting on Aniakchak's behalf. (ECF No. 41 at 4). In other words, the clause cannot apply to Weston because Weston faced a claim of direct negligence—not vicarious liability through Aniakchak's acts.

Here, Century's argument exhibits the twin virtues of coherence with case law and with common sense. Both insurance policies were triggered by the Complaint, and both the initial and amended Complaints alleged that Weston was directly negligent and that that Aniakchak was "at all times relevant . . . a subcontractor on the project." (ECF No. 37-4). But even if the Ongoing Operations AI Endorsement did apply, and Weston is an "additional insured" under the Century Policy, the subcontract cannot be read to make Aniakchak (and Aniakchak's insurer) liable for *every* potentially negligent act committed by Weston. It is true that the subcontract requires Aniakchak to indemnify Weston from and against claims "alleged to be caused in whole

---

[5] This portion of the C&I Policy reads, in relevant part: "This insurance is primary except when Paragraph b. below applies." (ECF No. 37-13). Paragraph b. reads as follows:

    **b.**    **Excess Insurance**

        (1)    This insurance is excess over:

        (b)    Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

or in any part by any act or omission of a Subcontractor . . . regardless of whether it is also caused in part by a party indemnified hereunder." But Ms. Daniels' negligence claim against Weston relates specifically to Weston's non-delegable duties, and does not refer to acts or omissions of Aniakchak. (ECF No. 37-4 at 5-6). Thus, there is simply no evidence—either intrinsic to the contract or extrinsic to it—that Aniakchak agreed to assume liability for all potentially negligent acts Weston could undertake in connection with performance of the subcontract.

Because the "additional insured" clause does not apply to claims of negligence against Weston, the remaining excess insurance clauses conflict. Under these conditions, the conflicting provisions negate each other and the triggered policies prorate defense costs by coverage limits. *See Cont'l Ins. Co. v. U. S. Fid. & Guar. Co.*, 528 P.2d 430, 435 (Alaska 1974) (holding that Alaska law embraces "the principle of equitable subrogation and rule that the defense costs must be shared pro rata between concurrent insurers in proportion to the amounts of coverage they have provided"). For example, in *Werley*, the Alaska Supreme Court held that the rule of law to be applied "in all cases where conflicting 'other insurance' clauses of the excess, prorate, or escape types are found" is as follows: both clauses are "mutually repugnant" and should be "disregarded." *Werley v. United Servs. Auto. Ass'n*, 498 P.2d 112, 117–19 (Alaska 1972). After that, "if the loss were less than the policy limits, it should be prorated according to the limits of both policies. If not, both policies would be effective up to their limits." *Id.* at 117 (citing *Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.*, 219 Or. 110, 341 P.2d 110, reh. denied, 219 Or. 110, 346 P.2d 643 (1959)).

Thus, as to the cost of defending Weston, the Court **GRANTS** Century's Motion for Summary Judgment, **DENIES** C&I's Motion for Summary Judgment, and **ORDERS** the parties to allocate the cost of defense on a pro-rated basis according to the limits of both policies.

### C. Who must bear the costs of Mr. Lind's defense?

As for the cost of Mr. Lind's defense, C&I argues that Aniakchak's subcontract with Weston required Aniakchak to maintain "contractual liability coverage, including coverage for Subcontractor's indemnification obligations." The Century Policy, C&I maintains, does just that. The Primary AI Endorsement in the Century Policy shows that the set of additional insured entities includes all "person(s) or organization(s)" to which Aniakchak must provide coverage "as required by written contract." In other words, in C&I's telling, Aniakchak's subcontract with Weston "required Aniakchak to defend and indemnify Weston *and Weston's employees* against claims for injuries caused by Aniakchak. It further required Aniakchak to carry primary, non-contributory insurance coverage for that defense and indemnity obligation." (ECF No. 44 at 3). Mr. Lind, an alleged employee of Weston, was therefore entitled to be defended and indemnified by Aniakchak, and the duty of defense ran entirely to Century.

Century argues that the set of covered employees is not governed by the subcontract between Weston and Aniakchak—a contract to which no insurer was party—but instead by the plain language of the insurance contracts. Here, both policies provide that "workers are insureds under the policy for acts within the scope of their employment by you or while performing duties related to the conduct of your business." The initial Complaint and the Amended Complaint alleged that Mr. Lind was "at all times relevant . . . employed as a driver by Aniakchak." (ECF No. 37-1 at 3). But the Second Amended Complaint asserted that Mr. Lind was employed by *both* Aniakchak and Weston and that Weston "retained control over Defendant Konan Lind's work, and directed his work during the contract" such that it could be held vicariously liable for the acts or omissions of Mr. Lind in the scope of his duties. (ECF No. 37-4). Thus, in Century's telling, the duty to defend was triggered under both Century and C&I's policies.

The question then becomes one not of duty, but apportionment. In Century's view, the "other insurance" clause in the Century Policy governs. The "other insurance" clause provides that the Century Policy is excess insurance "unless the other insurance is issued to the named in the Declarations of this Coverage Part." (ECF No. 37-6). And when the insurance is excess, the Century Policy disclaims the duty to defend. (*Id.*). Conversely, the C&I Policy does not include an "other insurance clause," and explicitly states that it is "primary" insurance but for a few caveats not applicable here. Therefore, in Century's telling, C&I is the primary insurer of Mr. Lind. And under Alaska and Pennsylvania law, when one insurance policy contains an "other insurance" clause and the other contains a "primary" insurance clause, the primary insurer is 100% responsible for the cost of defense. *See Providence Washington Ins. Co. of Alaska v. Alaska Pac. Assurance Co.*, 603 P.2d 899, 903 (Alaska 1979); *Nationwide Ins. Co. v. Horace Mann Ins. Co.*, 2000 PA Super 245, ¶ 14, 759 A.2d 9, 13 (2000) (holding that "excess coverage is not considered collectible insurance for purposes of the underlying coverage").[6]

As a threshold matter, both Pennsylvania and Alaska law provide that the duty to defend arises "if the complaint *on its face* alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy . . . ." *Attorneys Liab. Prot. Soc'y, Inc., v. Ingaldson Fitzgerald, P.C.*, 370 P.3d 1101, 1111–12 (Alaska 2016) (quoting *CHI of Alaska, Inc. v. Emp'rs Reinsurance Corp.*, 844 P.2d 1113, 1115 n. 5 (Alaska 1993) (emphasis in original) (citation omitted)); *see also Babcock & Wilcox Co. v. Am. Nuclear Ins.*, 635 Pa. 1, 20, 131 A.3d 445, 456 (2015) ("An insurer is obligated to defend its insured if the factual allegations of the complaint

---

[6] C&I attempts to distinguish these cases by arguing that *Providence Washington* dealt with two policies with identical excess other insurance provisions and *Nationwide* dealt with an excess insurance provision versus a *pro rata* provision. (ECF No. 42 at 9). Both distinctions are, here, without difference; both cases speak to apportionment in circumstances where one policy provides primary coverage and the other provides excess coverage.

on its face encompass an injury that is actually or potentially within the scope of the policy") (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 607-16, 2 A.3d 526, 540-45 (2010)). C&I's theory of liability improperly imports evidence *extrinsic* to the complaint—namely, the subcontract between Weston and Aniakchak. This is impermissible not only because it is inconsistent with Alaska and Pennsylvania law, but also because it would require this Court to place liability on Century based on language in a contract to which it was not a party.[7] To the extent C&I believes that Aniakchak breached its subcontract by failing to maintain a policy that fully indemnified Weston and all Weston employees—thereby causing C&I to improperly incur the cost of defending Mr. Lind— C&I may be able to state a claim against Aniakchak, but not with Century.

As to the cost of defending Mr. Lind, the Court therefore **GRANTS** Century's Motion for Summary Judgment and **DENIES** C&I's Motion for Summary Judgment.

## IV. CONCLUSION

None of the material facts in this case is in dispute. Because the parties should be held liable for Weston's defense on a pro-rated basis, the Court **GRANTS** Century's Motion for Summary Judgment as to the cost of defending Weston and **DENIES** C&I's Motion for Summary Judgment as to the same. And because the Century Policy is excess to the C&I Policy with respect to Mr. Lind's defense, this Court **GRANTS** Century's Motion for Summary

---

[7] C&I argues that the Court should be guided by *First Mercury Insurance Company v. Cincinnati Insurance Company*, a recently-decided case from the Tenth Circuit. (Nos. 17-2006 and 17-2001 (10th Cir. Feb. 26, 2018). But *First Mercury* is inapposite. Although the Tenth Circuit did refer to provisions contained within a subcontract to resolve otherwise-conflicting provisions in insurance policies, in that case—unlike in this one—the insurance policy explicitly contemplated that a future subcontract could augment coverage. (*Id.* at 27 (noting that excess insurance provisions did not conflict where one policy provided that "[w]here required by a written contact signed by both parties, this insurance will be primary & non-contributing only when and to the extent as required by that contract" and where, in fact, a written contract between the parties "provided just such a requirement").

Judgment and **DENIES** C&I's Motion for Summary Judgment as to the cost of defending Mr. Lind.

**IT IS SO ORDERED.**

                                                                 s/Algenon L. Marbley
                                                               **ALGENON L. MARBLEY**
                                                               **UNITED STATES DISTRICT JUDGE**

**DATED:  March 19, 2018**